| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | EASTERN DISTRICT OF NEW YORK (BROOKLYN) |

```
 3   UNITED STATES OF AMERICA,
                                    Case No. 1:23-cr-00433-EK-3
 4              Plaintiff,

 5   v.                             Brooklyn, New York
                                    November 3, 2023
 6   THOMAS SMITH, also known as    2:36 p.m.
     papa,
 7
                Defendant.
 8
```

```
 9              TRANSCRIPT OF ARRAIGNMENT HEARING
                BEFORE THE HONORABLE LOIS BLOOM
10              UNITED STATES MAGISTRATE JUDGE

11   APPEARANCES:
     For the Plaintiff:        Drew G. Rolle, Esq.
12                             John O. Enright, Esq.
                               Matthew R. Galeotti, Esq.
13                             U.S. Attorney's Office
                               271-A Cadman Plaza East
14                             Brooklyn, NY 11201

15   For the Defendant:        Jeffrey S. Dahlberg, Esq.
                               Federal Defenders of New York
16                             One Pierrepont Plaza
                               16th Floor
17                             Brooklyn, NY 11201

18   Also Appearing:          Cheryl Lloyd
                               Sonya Smith
19                             Jonathan Thompson

20   Clerk:                   I.H.

21   Court Recorder:          Electronic Sound Recording

22

23

24

25
```

1    Transcription Service:         Chris Hwang
                                    Abba Reporting
2                                   PO Box 223282
                                    Chantilly, Virginia  20153
3                                   (518) 302-6772

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Proceedings recorded by electronic sound recording;
      transcript produced by transcription service.
25

1          (Call to order at 2:36 p.m.)

2              THE CLERK:  Case number 23-CR-433, United States v.

3      Thomas Smith.

4              Counsel, starting with the Government, please state

5      your appearances?

6              MR. ROLLE:  Good afternoon, Drew Rolle, Matthew

7      Galeotti, and John Enright for the Government.

8              MR. DAHLBERG:  Good afternoon, Your Honor, Jeff

9      Dahlberg, Federal Defenders alongside Mr. Smith.

10             THE COURT:  Good afternoon, Mr. Smith.  Please be

11     seated.  The purpose of today's proceeding is to make sure that

12     you know that the grand jury has returned an indictment against

13     you.  The indictment contains three counts, securities fraud,

14     conspiracy, wire fraud conspiracy, money laundering conspiracy.

15             Have you seen the indictment and reviewed it with

16     your attorney?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  So the purpose of today's proceeding was

19     to make sure that you understand the nature of the charges and

20     to make sure that you understand that you have certain

21     constitutional rights.

22             So, first, you have to be represented by counsel at

23     today's proceeding and all future proceedings before the Court.

24     And if you are unable to afford counsel, you may make an

25     application to the Court and the Court will appoint counsel to

1   represent you.  That's the first issue.

2           Mr. Dahlberg said that he was in the middle of

3   completing a financial affidavit.  Now Federal Defenders are

4   the office within the Court with some of the best attorneys

5   that we see who represent people who are unable to afford their

6   own counsel.

7           And so, what is -- Mr. Dahlberg, what is the

8   situation here?  You can put it on the record.

9           MR. DAHLBERG:  Thank you, Your Honor.  I had a chance

10  to meet with Mr. Smith.  He would like to request that the

11  Court appoint counsel for today.

12          My understanding is that -- so he has retained

13  counsel in Utah, who is representing him on a civil matter.

14  And my understanding is Mr. Smith is continuing to have

15  some -- to explore whether it's feasible and financially to

16  have either that counsel or another counsel retained to

17  represent him.

18          THE COURT:  So let me just say you do have the right

19  to counsel of your choice, but -- and I have no idea who this

20  retained counsel in Utah is for a civil case, but you would be

21  unwise to choose somebody just because they're representing you

22  in another forum because they know nothing about criminal law

23  and they know nothing about this Court.

24          So if that was what your intention was to get

25  somebody from Utah, who's representing you in a civil case,

1   please re-examine that thought process.

2           Okay, you don't have to answer to me, but I hear what

3   Mr. Dahlberg is saying is that you don't know that he'll

4   qualify, which was what my thought was looking at the Pre-Trial

5   Services Report he bought a property for $815,000 in 2021.  I

6   don't know how he would qualify for the appointment of counsel.

7   He has a monthly income of about $10,000 a month.

8           MR. DAHLBERG:  That's all accurate, Your Honor.

9   He's -- I mean, the Pre-trial Services Report also indicates

10  that he has monthly expenses of about $8,000 a month.  He

11  supports 5 other people, which includes his other --

12          THE COURT:  I understand his mother, who has multiple

13  strokes and is bedridden; his father, who was in a car

14  accident.  I understand.  He's got a lot on his plate.

15          And if you're making the representation as a person

16  from Federal Defenders that he qualifies, that's different, but

17  I have no idea what representation you're making, Mr. Dahlberg,

18  because first, you said to me that you were just representing

19  him for purposes of today's proceeding.

20          So is that the position?  You're going to stay on the

21  case?  Or is the position that you're not staying on the case

22  and you're a placeholder and he's going to retain counsel?

23          MR. DAHLBERG:  May I just for a moment, Your Honor?

24          MR. ROLLE:  And, Judge, just if the Government may

25  for a moment?

1          THE COURT:  Why don't you tell me what your position

2     is --

3          MR. ROLLE:  Yes.

4          THE COURT:  Mr. --

5          MR. ROLLE:  Well, Your Honor I think we --

6          THE COURT:  -- Rolle?

7          MR. ROLLE:  -- as we understand it --

8          THE COURT:  State your name for the record?

9          MR. ROLLE:  This is Drew Rolle for the record, Judge.

10         THE COURT:  Thank you.

11         MR. ROLLE:  He was previously, well, when he was

12    arrested, we contact the lawyers with whom we've been engaged

13    for more than a year at Akin Gump here in New York, former

14    federal prosecutor, and a former SEC staff attorney who

15    represented him responding to grand jury subpoenas and our

16    investigation.

17         We learned about his arrest.  This is all from the

18    Government's perspective.  There's obviously probably more to

19    the story that they can speak to, but I just want to go through

20    the lawyers with whom we've interacted the past 72 hours.

21         So we alerted Mr. Altman at Akin Gump that he'd been

22    arrested.  We then heard back from Mr. Altman and then, another

23    counsel, who I believe is the counsel in Utah.

24         THE COURT:  Is it A-L-T-M-A-N?

25         MR. ROLLE:  Yes Peter Altman, yes.

1          THE COURT:  Thank you.

2          MR. ROLLE:  And the Utah counsel I don't have

3    his -- Matt Lewis (phonetic), who we understand represents him

4    in connection with --

5          THE COURT:  The SEC Matthew?

6          MR. ROLLE:  Well, I think it's a private securities

7    action in relation to some of the same underlying facts.  Now

8    we then spoke further with Mr. Lewis about our position on

9    detention and release and our thoughts as to the bond.  We had

10   normal discussions that we might have with an attorney who's

11   going to represent him.

12         He then flagged that he's not in New York.  He,

13   therefore, he expected his client to ask for Federal Defenders

14   for purposes of the hearing and to have time to explore whether

15   he will be retaining Mr. Lewis or something else.  So --

16         THE COURT:  So why would the Government -- I

17   understand that that was the name and you also had Mr. Altman's

18   name because Mr. Altman had represented Mr. Smith with regards

19   to subpoenas that had been served.

20         But why would the Government make the jump to start

21   discussing the charges before they've been given notice that he

22   has retained this Utah Matt Lewis?

23         MR. ROLLE:  Our discussions appeared as if he was

24   working already for him.  And so, the question of retainer, he

25   had contacted us before the question of his continued

1    appearance had been raised.

2             THE COURT:  Meaning Matt Lewis had contacted the U.S.

3    Attorney's Office regarding the arrest of Thomas Smith?

4             MR. ROLLE:  Right, when we reached out to Akin Gump,

5    the response was Akin Gump and this other lawyer --

6             THE COURT:  Thank you.  I didn't understand that.

7             MR. ROLLE:  -- who responded to more information from

8    us.  And we engaged them on that point.  And then, the date was

9    set here and here we are.  So I don't know the status of Mr.

10   Lewis.

11            THE COURT:  And what happened up in the District of

12   New Hampshire when he first appeared?

13            MR. GALEOTTI:  He had a federal.

14            THE COURT:  Mr. Galley -- state your name for the

15   record?  You can say it.  You don't have to feed it to Mr.

16   Rolle.  Go ahead.

17            MR. ROLLE:  Yeah.

18            MR. GALEOTTI:  Your Honor, we've been all handling

19   different aspects of this.  This is Matt Galeotti for the

20   record.

21            For the -- in New Hampshire, what the court said is

22   that it's the rule that Mr. Smith has substantial assets and

23   appointed Federal Defenders for the purpose of the initial

24   appearance.

25            At that point, these conversations that Mr. Rolle

1     described occurred.  And we had understood that retained

2     counsel would be appearing today until this morning when we

3     learned of this new development.

4            THE COURT:  Two things, Mr. Galeotti, before you go

5     off the topic.  So I don't know the Honorable Talesha Leah

6     Saint-Marc, who's the magistrate judge up in Concord, New

7     Hampshire.

8            Did the Court rule on whether he was entitled to

9     counsel or did they just punt it and say he has substantial

10    assets like I just did, but not do the analysis of whether in a

11    federal case of this type, he might qualify for the appointment

12    of counsel?

13           MR. GALEOTTI:  We've requested an expedited

14    transcript, which we don't have yet.  So the best I can do is

15    go off the conversations that we've had with the Assistant

16    United States Attorney in the District of New Hampshire.  My

17    understanding is something more akin to the latter, Your Honor.

18           THE COURT:  Meaning that they did not make a

19    determination or they did?

20           MR. GALEOTTI:  I believe she reviewed the papers and

21    like Your Honor believed that based on the Pre-trial Report, it

22    seemed unlikely that he would qualify.

23           THE COURT:  Well, again, I don't ever make that

24    determination.  And I want to be clear on the record so that

25    Mr. Smith understands this and anybody else who's listening

1    understands this.

2          When somebody presents an application for counsel,

3    they give me what their financial statement is, which is what I

4    interrupted Mr. Dahlberg in getting from Mr. Smith when we went

5    on the record a little bit earlier than he expected us to.

6          However, you have to consider the whole picture here.

7    So if he's caretaking five people, even if he has a good

8    income, his income may now go down to zero.  I don't know.  I

9    don't know if these charges are going to impact what his

10   monthly income is or whether he has other sources.

11         I know he bought a property for $815,000, which would

12   lead me to believe that he has substantial assets, but who

13   knows?

14         So I would like you to get that transcript.  And I

15   would like to find out -- Mr. Smith, you don't need to answer

16   me today with, but Mr. Dahlberg Is here to stand up today on

17   this indictment.

18         And I am telling you that the Federal Defenders are

19   some of the best attorneys we see, but he's going to have to

20   check with the people in his office whether you would qualify

21   even if you wanted to keep him as your attorney because if they

22   say you don't qualify, that's the end of that story, okay?

23         And down the road, if you run out of money, then you

24   might re-apply, but at this point in time, you have the right

25   to counsel.  And if you cannot afford to counsel, the Court

1    will appoint counsel to represent you.

2            Will you just speak to your client for a moment and

3    see what you're going to put on the record today as our

4    situation?

5            MR. DAHLBERG:  Yes, Your Honor.

6            THE COURT:  Thank you.

7        (Counsel confers with the Defendant)

8            THE COURT:  So while Mr. Dahlberg was discussing this

9    matter with Mr. Smith, I want to be transparent that Pre-trial

10   said that on the docket there was a representation that they

11   were only appointing counsel for the purpose of that

12   proceeding.

13           But as I said, a magistrate judge in New Hampshire,

14   who is seeing somebody on a removal complaint and the person is

15   indicted in this Court, that person can make an application to

16   this Court and I'm not tied to whatever the determination was

17   in the District of New Hampshire.

18           And really, my inquiry is he may want to retain

19   counsel.  And therefore, this is all elementary and Mr.

20   Dahlberg will just be standing in today.  And if that's the

21   situation, so be it.

22           But if he wants Mr. Dahlberg or the Federal Defenders

23   to continue to represent him, they should flesh out this issue.

24   We should know whether he's going to have any income after

25   today to support the five sick relatives that seemingly depend

1  on him.

2          So where are we going here, Mr. Dahlberg?

3          MR. DAHLBERG:  May I just have another minute to

4  finish my conversation?

5          THE COURT:  Certainly.

6          MR. DAHLBERG:  Thank you.

7      (Counsel confers with the Defendant)

8          MR. DAHLBERG:  Thank you for that time, Judge.  I've

9  spoken with Mr. Smith and I think he had a misunderstanding as

10  to whether my office being appointed going forward would

11  preclude him from seeking other counsel in the future if he

12  chose to.

13          But now that we've cleared that up, he would like me

14  to take the position.  And I think I would agree, based on my

15  review and my conversation with him, that he does qualify for

16  appointed counsel.

17          THE COURT:  So please flesh that out a little bit

18  because it looks like he has a 1.2 million residence.  He owes

19  $180,000 for lawyer fees.  He's got a car.  He's got a personal

20  savings account of $15,000.  So they say his estimated net

21  worth is over a million dollars.

22          Now I understand that's with money coming in.  And he

23  was expecting money to come in $10,000 a month.  So what is

24  your position as to why he would qualify?

25          MR. DAHLBERG:  So first to clear up because I know

1    Your Honor had a question about whether Mr. Smith is going to

2    be able -- is going to still after a job after today

3    essentially.

4           And the answer to that is, yes, he is permitted -- I

5    believe my understanding is a security clearance that he

6    possessed with the company that he contracted for has been

7    suspended.

8           However, he has been permitted to continue to do work

9    on a contract basis with that company that's named in the

10   Pre-Trial Services Report.

11          In fact, one of our proposed sureties is an employee

12   of that company, who's here in his personal capacity to support

13   Mr. Smith because he believes in Mr. Smith and knows him well.

14          THE COURT:  So what would that be a month?  Again,

15   when you're telling me that he would qualify for counsel, I

16   have no idea what -- I only have what I have.

17          And most people, Mr. Smith, do not have million

18   dollar homes nor do they have the possibility of making $10,000

19   a month that qualify for Federal Defenders of New York.

20          That doesn't mean that you wouldn't qualify.  What

21   I'm trying to say is I know that there are people that depend

22   on you and that you also apparently have your own chronic

23   medical issues.

24          MR. DAHLBERG:  So, Your Honor, that has not changed.

25   Mr. Smith is going to continue to have to support those members

1    of his family to pay some significant medical expenses every

2    month including for himself and to keep a home running, where

3    his parents, and aunt, his wife and two friends are living.  He

4    is not charging them rent or anything of that nature.  So his

5    income is going to be the same.

6            THE COURT:  Does he own it outright?

7            MR. DAHLBERG:  I'm sorry?

8            THE COURT:  Does he own the home out right?

9            MR. DAHLBERG:  Yes, Your Honor.  However, I would

10    note that that home is -- that property is named in the

11    indictment as being subject to forfeiture.

12            THE COURT:  Forfeiture?

13            MR. DAHLBERG:  Yes.

14            THE COURT:  Okay.

15            MR. DAHLBERG:  So I don't believe it would be --

16            THE COURT:  Can I just ask, does the Government have

17    any opposition that they want to state on the record to the

18    Federal Defenders' representation that he would qualify for

19    appointment of counsel?

20            MR. ROLLE:  I wouldn't say opposition.  I think that

21    it's premature and we have an incomplete record as to his

22    assets.  I say that knowing that he, as we sit here today, has

23    control over crypto currency wallet addresses that have more

24    than 40 to almost $40,000 in them stated to the agent.

25            And that's on what we can see on the block chain.  He

1       stated at the time of his arrest that he doesn't use -- he

2       likes to use paper wallets, which just for Your Honor's

3       edification on this point, it's new to me, is that these are

4       things we can't even see.  We have to then un -- it's cold

5       storage, it's off the chain.  We have to see what is in them.

6

7               Now none of that is reflected in the affidavit.  And

8       I'm not passing any -- make any point about it was purposely

9       left off here or forgotten or what.  It's --

10              THE COURT:  Or somebody didn't know what wallet --

11              MR. ROLLE:  Exactly.  Somebody didn't know what to

12      ask about.  My point is there other assets that are out there

13      that we are aware of, digital assets that are --

14              THE COURT:  So let me just without trying to say that

15      I foreclose anybody because do whatever inquiry you need, due

16      diligence on both sides.  The Federal Defenders doesn't want to

17      represent somebody if they could retain counsel.

18              But on the flip side of it, he supports five other

19      people, even if he continues without the security clearance for

20      whatever company it is who is contracting, it sounds like he

21      and his family members have substantial health issues.

22              And so, the home that you have now said in this

23      indictment is subject to forfeiture is not going to help them

24      pay those bills.  Even though the home's paid off, they would

25      have to sell the home in order to pay other bills.

1          So since I know that this type of case may take a

2    good amount of time to resolve, I am going to appoint Federal

3    Defenders to represent Mr. Smith subject to both sides re-

4    visiting this issue if there's further information that the

5    Court needs know about.

6          MR. ROLLE:  I think that's appropriate.  Thanks,

7    Judge.

8          THE COURT:  Okay, Mr. Dahlberg?

9          MR. DAHLBERG:  That is --

10          THE COURT:  And so, that's the first.  You can be

11    seated now.  So, Mr. Smith, I've appointed Mr. Dahlberg, who's

12    a member of the Federal Defenders of New York.

13          As I've said, they're some of the best lawyers that

14    we see.  Just because you're not paying for his services don't

15    underestimate the quality of the representation.

16          They only represent people in this Court.  They do no

17    other work.  So they are very well acquainted with what goes on

18    in these types of cases, although I can say it is unusual for

19    them to represent somebody who has a million dollar home.

20          But with all the other things I've put on the record,

21    I've explained why I believe it is in the interest of justice.

22    And I'm making that appointment, which can be revisited if need

23    be.

24          You have the right to remain silent.  If you started

25    to make a statement, you may stop.  Any statement you make to

anyone other than your lawyer can be used against you.  Do you
understand you have the right to counsel and the right to
remain silent?  I need you to use your voice.

        X:  Yes, I understand, Your Honor.

        THE COURT:  Very good.  And as I asked first, did you
have a chance to review the indictment, the charges you with
three counts with your attorney?

        X:  I have.

        THE COURT:  And do you understand the charges that
are being made again you?

        X:  Not fully, but.

        THE COURT:  I didn't ask do you agree with them, but
do you understand what they are alleging?

        X:  That's why I was saying not fully, but I know
what the three big points.  I understand.

        THE COURT:  And you've reviewed the indictment with
your attorney?

        X:  Yes.

        THE COURT:  So, Mr. Dahlberg, have you reviewed the
indictment with Mr. Smith?

        MR. DAHLBERG:  Yes, Your Honor.  It's not in much
detail.  It's a lengthy indictment and we spent most of our
time working on other issues, but Mr. Smith did get a copy.
He's had a copy for several days now.  I would -- and he
reviewed it also in New Hampshire.  And I will make sure

1    I -- that he understands it before he needs to --

2           THE COURT:  And have you advised him of his

3    constitutional rights?

4           MR. DAHLBERG:  Yes, Your Honor.

5           THE COURT:  And do you wish me to read the indictment

6    aloud?

7           MR. DAHLBERG:  No, Your Honor.

8           THE COURT:  And is your client prepared to enter a

9    plea?

10          MR. DAHLBERG:  Yes he's prepared to enter a plea of

11   not guilty.

12          THE COURT:  A plea of not guilty shall be entered on

13   behalf of Thomas Smith to all counts in the indictment.  Okay,

14   so now, what is the Government's position on the question of

15   detention or bail?

16          MR. ROLLE:  Your Honor, the Government believes that

17   while this Defendant could be released, that we need a

18   substantial bond with a number of specific conditions.

19          We have flagged those for counsel here today and the

20   other lawyers who have contacted us in the past couple of days.

21   I'm happy to walk through those and the basis for the request.

22          THE COURT:  Well, did you see what the Pre-Trial

23   Addendum recommends, because that's what I was looking at?

24          MR. DAHLBERG:  I did see what the Pre-Trial Addendum

25   recommended.

1          THE COURT:  And so, that would be my starting point,

2     which has restrictions on travel and if he has any passports,

3     getting those.

4          And reporting to Pre-trial Services and subject to

5     random visits and random drug evaluation, testing and

6     treatment, and mental health evaluation if needed, and

7     verifiable employment.  No contact with victims or witnesses or

8     co-Defendants.

9          Surrendering any firearms, not accessing any digital

10    currency wallets, digital assets or digital tokens, either

11    paper or electronic, and must not transfer any convertible

12    virtual currency or direct anyone to do so on his behalf.

13         Must not engage in any virtual currency purchases or

14    sales or direct anyone to do so on his behalf and must disclose

15    any new accounts opened at any financial institution to

16    Pre-trial Services.  Does that cover our basis?

17         MR. ROLLE:  Think broadly, yes, I think we have

18    tweaks to them that we think are appropriate here.

19         THE COURT:  Raise it now.

20         MR. ROLLE:  So we would be asking for a million

21    dollar bond partially secured ideally.  I think we've spoken

22    with counsel.  And I think an unsecured bond in that amount, we

23    would be okay from our perspective.

24         I think we would look for more than one responsible

25    surety.  We're ask for home detention with electronic

1  monitoring for Pre-trial Services to monitor the electronic

2  devices that he has in the home.

3          THE COURT:  Can we roll one back, okay?

4          MR. ROLLE:  Sure.

5          THE COURT:  Okay, I have no problem with the

6  electronic monitoring of the devices.  Why does this person

7  have to be on home detention?  He has no criminal history.

8          I understand he lives in New Hampshire and that's

9  near the border, but he's got five people that depend on him

10  sticking it out where he is.  We could get a confession of

11  judgment on the property, so that he is tied to that property,

12  but I don't want with all these health conditions for that to

13  become every time he needs to take somebody somewhere, or

14  himself for that to be onerous for -- we're asking for our

15  sister district in New Hampshire to oversee this.  And I don't

16  want it to be overly burdensome.

17          MR. ROLLE:  And so, we hadn't heard of the sort of

18  health responsibilities that we learned of today.  I think it's

19  a fair point, but I do think a restriction on his movement in

20  some manner, a curfew, which would allow him to be out during

21  the times any of those things would occur and home when the

22  curfew is up would address the concern.

23          THE COURT:  But again, I'm asking you is that because

24  you think he's a risk of flight?

25          MR. ROLLE:  I think --

1           THE COURT:  Even he has all of these relationships

2    and you're going to have the paperwork for his biggest asset,

3    the million dollar home in your hands?

4           MR. ROLLE:  Yes, Judge.  This is a case in which

5    these assets are accessed from anywhere.

6           THE COURT:  Not the home.

7           MR. ROLLE:  I'm talking possibility to flee.  We had

8    a Defendant who is still at large, who's in Dubai.  His

9    co-conspirator.

10          THE COURT:  But that's not him.

11          MR. ROLLE:  But I think reflects what this case is

12   about.  These folks have been focused on this investigation.

13   They made partial productions of information in part to hide

14   document from the Government, which is obstruction, which we

15   think there's a risk of.  And I think there needs to be

16   something to assure that that's addressed.

17          THE COURT:  Mr. Rolle, I completely understand, but I

18   am not going to tar Mr. Smith with the brush of his

19   co-defendants.  I take each --

20          MR. ROLLE:  They were communicated about the case,

21   Judge.  I think it's relevant.  I think it's relevant.

22          THE COURT:  That his co-defendant is in Dubai is

23   relevant to whether he's going to flee when he has ill family

24   members and he himself has a very serious illness?

25          MR. ROLLE:  I do, Judge.  I think it is relevant.  I

1  think two of the three Defendants in this case have

2  (indiscernible) their ties abroad.

3        And it's not a small feat to do so and I think that

4  risk can be mitigated short of home detention, but with some

5  tip of curfew given the seriousness of this case, his access to

6  substantial assets, his ability to leave or not appear.

7        He can go to Canada.  He could also just not come

8  back.

9        THE COURT:  Except in the ill family members who are

10  being treated in New Hampshire or left and he's going to have

11  to re-locate everybody.

12        MR. ROLLE:  But I'm not quite sure those folks factor

13  as much into his life as we're saying today.

14        THE COURT:  I have no idea.

15        MR. ROLLE:  Given the case, given the conduct, given

16  what's brought us here today.  He bought this home with

17  proceeds.  He then moved the family there.  These are things

18  he's chosen and has done.

19        This house is here.  They live there.  Whether he's

20  here or not, they're not -- I would suspect they would remain.

21  His wife is here.

22        THE COURT:  Except that if you take his home where

23  they all live, which is what I'm suggesting that we put the

24  confession of judgment instead of the electronic bracelet on,

25  then he's got a mother who suffered multiple strokes and is

1    bedridden, a father who had a car accident and part of his

2    brain was removed, and they are at this home.

3            MR. ROLLE:  I understand., Your Honor, but I'm saying

4    the emphasis we're placing today is not emblematic of the

5    conduct that this Defendant in the course of the scheme up

6    until now this is something who flies to Miami.

7            THE COURT:  But can I just ask you.  He's known about

8    this because of the Akin Gump guy.  And he got the Matt Lewis

9    guy.  So he's known about this for a while.

10           MR. ROLLE:  An --

11           THE COURT:  He could have left, yes, obstructed is

12   another charge that you might level in a superseding

13   indictment.

14           MR. ROLLE:  I think under the Bail Reform Act, it's

15   the core question we're addressing today and the conditions

16   that we're imposing to mitigate that risk.  That's why I'm

17   raising it.

18           THE COURT:  Wait, wait, wait, I didn't follow that.

19   The instruction is one of the things I should consider in

20   whether he's a risk of flight?

21           MR. ROLLE:  No, as to whether the conditions we are

22   asking for are required to mitigate it.  We're talking about

23   flight.  We're ignoring the obstruction.  I think all of them

24   are intermixed and should be addressed with the curfew.

25           THE COURT:  But I'm just saying I shouldn't have to

1   consider what Nagy (phonetic) or Caroni (phonetic) did in terms
2   of what Mr. Smith -- his conditions are, even if they did go
3   out of this country and they're beyond the reach of
4   extradition.
5           I get what you're saying, but I don't think that's my
6   job to make sure Mr. Smith has more onerous terms than I would
7   ordinarily put on him because the co-defendant has taken some
8   action.
9           MR. ROLLE:  I'm simply saying people in these cases
10  can flee.  They've done it in this case.  So we can't just say
11  it's fine and he'll stay there.  We're trying to forecast the
12  future looking at the data points of today.  And I think
13  they're relevant to the determination.
14          THE COURT:  But, again, in looking at Pre-Trial
15  Services, and I do understand that you didn't get to stand over
16  the Pre-Trial Services officers in either New Hampshire or in
17  our Eastern District, but they're not recommending that I put
18  him on a monitor.
19          MR. ROLLE:  Understood, Your Honor.
20          THE COURT:  And so, that's why I'm pushing back.
21          MR. ROLLE:  New Hampshire didn't pass judgment on the
22  case.  That was made explicit on the record there.  I take that
23  Eastern District of New York has not recommended that.  We
24  disagree.  We simply disagree.
25          THE COURT:  Okay, thank you.  Mr. Dahlberg?

1          MR. DAHLBERG:  Thank you, Your Honor.  We would

2     certainly -- we're certainly open to release conditions.  Mr.

3     Smith does not object to the conditions that have been proposed

4     by Pre-Trial Services.  We don't think location monitoring or a

5     curfew or home detention are appropriate here.

6          The Government wants the Court to consider the data

7     points as it says.  I think the Court should also consider the

8     data points of Mr. Smith Specifically.

9          And that's that as the Government pointed out, he's

10    known about this investigation for I believe at least a year.

11    He appeared in New Hampshire two days ago.  He was released on

12    conditions and he's here today.

13          So Mr. -- there's nothing that Mr. Smith has done

14    that would show that he's actually a risk of flight.  I don't

15    even think the Government's met their burden of establishing a

16    serious risk of flight for -- to ask for detention in the first

17    place.

18          THE COURT:  Well, again, they're not asking for

19    detention.  They're asking for me to impose location monitoring

20    and a curfew.

21          And so, I'm going to adopt all of the recommendations

22    of Pre-Trial Services.  And those will be the conditions that I

23    am willing to impose here.

24          And I do note that there were substantial firearms,

25    but I believe they were turned over already to the in-laws.

1    And I do understand what your point is, Mr. Rolle,

2  but again under the Bail Reform Act, I'm supposed to impose the

3  conditions that I believe will make sure that he remains to

4  face these charges and that he's not a danger to the community.

5    I do understand there's a lot going on in this case

6  that I don't know about. And I imagine you and Mr. Enright and

7  Mr. Galeotti have been working on it for a long time, but I am

8  dealing with a sophisticated case where a guy has a lot of

9  things that in my mind are not fungible.

10    Whereas money is fungible. The parents with the very

11  serious health conditions living at this premises that you have

12  a forfeiture on, but it's -- we're far from the goal line here.

13  He was just indicted.

14    So I'm going to adopt the conditions as set forth in

15  the Addendum, the Pre-Trial Services Addendum, which is

16  everything I read into the record.

17    I am not going to put him on a curfew. If there's a

18  reason why we need to re-visit that, you know how to re-visit

19  it.

20    If there's any indication as we go forward that he is

21  getting closer to the line of trying to disappear or whatever

22  is that your concerns would be, you could raise them to the

23  Court.

24    MR. ROLLE:  Thank you, Your Honor. I hadn't finished

25  the other conditions that we were going to ask for beyond

1   curfew, where we paused.  I'm happy to ask for them now or.

2               THE COURT:  Go ahead.

3               MR. ROLLE:  Thank you, Your Honor.  We had asked for

4   the Pre-trial Services monitoring electronic devices.

5               THE COURT:  We put that in, yes.

6               MR. ROLLE:  And then beyond that, there's a

7   restriction as to the accessing of digital currency wallets.

8   Just tinkering with that language, we want to make sure there's

9   no access to cryptocurrency exchanges or trading platforms

10  entirely.

11              THE COURT:  That's fine.

12              MR. ROLLE:  And then, the no -- on the no contact

13  provision, I think we also want to say explicitly that there

14  not be contact with any current or former SafeMoon employees or

15  contractors, anyone who worked for his former entity.

16              THE COURT:  Is the -- and I don't know this, is the

17  place where he thinks that he will be able to continue

18  employment for affiliated?

19              MR. ROLLE:  I don't believe so.  Your Honor, we're

20  happy to hear more about that.  We had learned of it at the

21  arrest.  We don't have any information that they're connected.

22              THE COURT:  So, in other words, they don't want him

23  to do anything with SafeMoon?

24              Felix, there's almost no room to write anything here.

25  Can I ask you, Mr. Rolle, there were two other conditions that

1   you just read in that we have no problem with.  One is here.

2           Yeah, have him write it on that and we'll put it in.

3   Thank you.

4           Okay, who are the people who are going to sign on to

5   a bond for Mr. Smith?

6           MR. ROLLE:  I just have one more, Your --

7           THE COURT:  Oh, go ahead, Mr. Rolle.

8           MR. ROLLE:  And then, no investment promotional

9   activities during the pendency of the case.

10           THE COURT:  I don't know what that means so no

11   investment promotional --

12           MR. ROLLE:  Yeah.

13           THE COURT:  -- activities?

14           MR. ROLLE:  Securities cases, we have asked for and I

15   think the languages that he can't go out and solicit

16   investments and --

17           THE COURT:  I thought he was the tech guy in this

18   whole thing?

19           MR. ROLLE:  Well, he at the time --

20           THE COURT:  I didn't think he was the salesman.  He

21   just doesn't look to me to be the salesman here.

22           MR. ROLLE:  Judge, and I think in this phase, it's a

23   whole different ballgame of what is sales, what is not, but he

24   was as the indictment reflects the marketer of the token along

25   with the other Defendants.  And we understand that there are

1    other cryptocurrency projects that happened after this one.

2            THE COURT:  Let's not go way down the road.  Do you

3    have any opposition to that extra term?

4            MR. DAHLBERG:  No objection.

5            THE COURT:  Write on the page, we'll put it on the

6    bond.  Now who is it that's coming up to sign this bond?

7            MR. DAHLBERG:  Mr. Smith has three individuals who

8    are here today that came with him, his mother-in-law Cheryl

9    Lloyd (phonetic), his wife Sonya Smith (phonetic), and his

10   friend Jonathan Thompson (phonetic).

11           THE COURT:  If you don't mind, could you all come to

12   this podium, please?  Do you have the names?

13           MR. DAHLBERG:  Yes.

14           THE COURT:  You just push the.  No, no, no, just the

15   podium, please.  Thank you.  Okay, my deputy's going to swear

16   to the truth of the testimony.  Thank you.

17           THE CLERK:  The Judge is going to ask you questions,

18   so I'm going to put you under oath.  Please raise your right

19   hand.

20           THE COURT:  Right hand.

21           MR. THOMPSON:  Right hand.

22       (Ms. Lloyd, Ms. Smith, and Mr. Thompson are sworn)

23           THE CLERK:  Please state your name for the record and

24   speak loudly.  It's being recorded.

25           MR. THOMPSON:  Jonathan Thompson.

1          MS. SMITH:  Sonya Smith.

2          MS. LLOYD:  Cheryl Lloyd.

3          THE CLERK:  Thank you.

4          THE COURT:  Mr. Thompson, Ms. Smith, and Ms. Lloyd,

5   I'm sorry for the circumstances that bring you to our

6   courthouse today.  As you've been made aware, Mr. Smith has

7   been charged with a serious federal crime.

8          And as you can see, the Government is seeking not for

9   him to be held pending his charges on this matter.  They're

10  agreeing that he could be released, but they're concerned with

11  what they don't know and what -- I bet Mr. Smith's a really

12  smart guy and what we could manage to do.

13         And so, it is their job to ensure that he remains to

14  face these charges.  And it is my job that I set the least

15  restrictive terms that I can set to make sure that he is not a

16  danger to the community and that he is not a risk of flight.

17         And part of the Government's concern, well-founded

18  I'm sure, they know more about the case than I do, certainly

19  more than you guys do, is that other people have fled, one.

20         And two, that because Mr. Smith's a pretty smart guy,

21  if he wanted to get out of the country, he could probably

22  figure out a way.

23         Then he would have problems down the road, because he

24  wouldn't be able to come back to the country, but there are

25  people who are willing to do that.

1          So they want me to impose a number of conditions.  As

2    you've heard I've pushed back somewhat, but there are quite a

3    few conditions.

4          And bottom line, I'm the only that gets to set this

5    bond.  So it has to be for a substantial amount because the

6    home is worth a substantial amount.  And even though he does

7    not have a passport and he haven't travelled outside the

8    country, I have to make sure that he's going to come back.

9          So I'm setting the bond in the amount of $500,000.

10   And that is a promise that he will come back.  That's not

11   $500,000 that you're taking out of your pocket or going to a

12   bail bondsman to post.

13         And these are the conditions.  And he's asked you all

14   to sign onto this bound.  So if you sign the bond and he

15   doesn't live up to his obligations, in addition to ruining his

16   own life, the Government can go after you for the full amount

17   of bond.

18         Okay, so these are the conditions.  He must appear in

19   Court as required, surrender as directed for service of any

20   sentence imposed.

21         You must not commit a federal, state or local crime

22   while on release.  You must cooperate in the collection of a

23   DNA sample if it's authorized by law.

24         You must advise the Court in writing before making

25   any change in residence or telephone number.  You must not

1   possess a firearm, destructive device, or other dangerous

2   weapon, even if it's the live free or die state that you live

3   in.

4           You must not use or unlawfully possess a narcotic

5   drug or other controlled substance unless prescribed by a

6   licensed medical practitioner.  And I remind you that marijuana

7   is still prohibited under federal law.

8           That you must submit to Pre-trial supervision and

9   report to Pre-trial as directed.  They're not law enforcement,

10  they're an arm of the Court that makes sure that you're living

11  up to the obligations that I set in the bond.

12          You're subject to random home contacts and

13  verification of employment as deemed appropriate to monitor

14  compliance with the conditions of release.  And you must notify

15  Pre-trial Services as soon as possible of any new arrest.

16          You have no passport, Mr. Smith?

17          THE DEFENDANT:  No, I don't.

18          THE COURT:  And you may not get any passport or other

19  international travel document.  You must not leave New York and

20  New Hampshire and travel in between.  That's where you will

21  remain.

22          And you must not have any contact with any

23  co-defendants except in the presence of counsel, any victims or

24  witnesses.  Do you understand?

25          THE DEFENDANT:  I do.

1          THE COURT:  And you must undergo testing, evaluation,

2     and treatment for substance abuse as directed by Pre-trial.

3     And you must undergo evaluation and treatment for mental health

4     problems as directed by Pre-trial.

5          You must surrender any firearms to your in-laws.  And

6     you must not access any digital currency, wallets, digital

7     assets, or digital tokens either paper or electronic.

8          And you must not transfer any convertible virtual

9     currency or direct anyone to do so on your behalf.  Do you

10    understand?

11         THE DEFENDANT:  I understand.

12         THE COURT:  And you must not engage in any virtual

13    currency purchases or sales and you must disclose any new

14    accounts to Pre-trial Services.  Do you understand?

15         THE DEFENDANT:  I understand.

16         THE COURT:  And your electronic devices will be

17    subject to monitoring by Pre-trial.  Do you understand?

18         THE DEFENDANT:  Yes.

19         THE COURT:  And you should have no access to

20    cryptocurrency or digital asset exchanges or trading platforms.

21    Do you understand?

22         THE DEFENDANT:  I understand.

23         THE COURT:  You shall not engage in any investment

24    promotional activities.  Do you understand?

25         THE DEFENDANT:  I understand.

1          THE COURT:  And you should have no contact with

2    current or former employees or contractors of SafeMoon U.S.,

3    LLC or any of its subsidiaries and affiliates.  Do you

4    understand?

5          THE DEFENDANT:  I understand.

6          THE COURT:  Do you know who all the subsidiaries and

7    affiliates are?

8          THE DEFENDANT:  No.

9          THE COURT:  Can the Government supply that?

10         MR. ROLLE:  Yes, I actually think they're Defendants

11   in lawsuits to which he's a party, but we can get a list of the

12   names to counsel.

13         THE COURT:  I want you to give him a list of the

14   names because if he's not sure who they are, I don't want him

15   to for any reason violate the terms and conditions unwittingly.

16         THE CLERK:  Judge, do you want property also?

17         THE COURT:  Yes, there's going to be the property

18   that is where you live, I believe, the 240 Valley View Lane,

19   Bethlehem, New Hampshire, which going to be the papers for that

20   property are going to be put into the county court where the

21   property is.

22         You can't sell the property.  You can't re-finance

23   the property.  They're just going to hold the papers for the

24   property.

25             If for -- are you the sole owner of the property?

1      THE DEFENDANT:  Yes.

2      THE COURT:  If no any reason, you violate the

3   conditions, it will make it easier for them to get the $500,000

4   because it sounds like the property's worth more than that, but

5   they'd be able to sell the property to collect the full

6   $500,000.  Do you understand, Mr. Smith?

7      THE DEFENDANT:  I understand.

8      THE COURT:  Okay, so now, I've read all the

9   conditions.  Yes, Mr. Dahlberg?

10      MR. DAHLBERG:  Your Honor, is there a date by which

11   he's got to record that?

12      THE COURT:  I would say next week is a short week, so

13   we'll give you two weeks because it's in New Hampshire.  Is

14   that going to give you sufficient time?

15      MR. DAHLBERG:  Oh, yeah, okay.  I'll just give him

16   some guidance.  I --

17      THE COURT:  Well, again, Mr. Dahlberg, is there a

18   Federal Defenders in New Hampshire?

19      MR. DAHLBERG:  There are, yes.  And my office can

20   also help.

21      THE COURT:  Okay.  So between Mr. Dahlberg and

22   his -- every state has different rules about how this happens,

23   but since you're putting the premises in, I'm going to require

24   you to do it by November 17th.  We're at November 3rd today.

25   That gives you two weeks to do this, okay?

1        MR. DAHLBERG:  Thank you.

2        THE COURT:  All right, now I'm back to you, Ms.

3   Smith.  I understand you're married to Mr. Smith, is that

4   correct?

5        MS. SMITH:  Yes.

6        THE COURT:  How long have you been married?

7        MS. SMITH:  Two years.

8        THE COURT:  Do you have any children?

9        MS. SMITH:  No.

10       THE COURT:  And --

11       MS. SMITH:  Well, I mean, we have his stepson, but

12  it's not -- I don't have any physical children.

13       THE COURT:  And how old is the stepson?

14       MS. SMITH:  He's eight years.

15       THE COURT:  Does he live with you?

16       MS. SMITH:  Yes.  He lives with us, five -- he goes

17  to school in Bethlehem, where we are.  And he goes to his

18  mother's on the weekends.

19       THE COURT:  But he comes to the premises?

20       MS. SMITH:  Yes, yes, he lives with us.

21       THE COURT:  So you have responsibility for him?  And

22  what do you for a living, Ms. Smith?

23       MS. SMITH:  I'm unemployed right now.

24       THE COURT:  What was your last job?

25       MS. SMITH:  My large job would be I do graphic design

1    consulting.

2              THE COURT:  And when was that?

3              MS. SMITH:  The last year.  It was probably about two

4    and a half years.

5              THE COURT:  So before you were married?

6              MS. SMITH:  It was around the -- yeah, it was, yeah,

7    it was right before we were married.

8              THE COURT:  And Ms. Lloyd, you're the mother-in-law?

9              MS. LLOYD:  Yes.

10             THE COURT:  What do you to go for a living?

11             MS. LLOYD:  I'm retired.

12             THE COURT:  And what did you do before you the

13   American dream retired?

14             MS. LLOYD:  Well, my husband owns a business.  So I

15   help him out, but I -- the last time I had a job was -- well,

16   it was 2020.  I worked at J.C. Penney in North Conway for three

17   years.

18             THE COURT:  For three years?

19             MS. LLOYD:  Yeah.

20             THE COURT:  And what's the business your husband

21   owns?

22             MS. LLOYD:  It's an RV dealership.

23             THE COURT:  Love the accent.  RV dealership, I'm

24   sorry, that was very sweet.

25             MS. LLOYD:  I'm from New Hampshire.

1              THE COURT:  I love that.

2              MS. LLOYD:  I just have a North accent.

3              THE COURT:  They say we have accents in Brooklyn.  We

4    have no accents in Brooklyn.  Okay, anyway, I'm sorry.  And I

5    understand that you have already taken all the weapons that

6    were --

7              MS. LLOYD:  Yes.

8              THE COURT:  And so, they're at a separate property

9    not anywhere near this property?

10             MS. LLOYD:  Correct.

11             THE COURT:  Okay, and you understand the two of you,

12   I'll get Mr. Thompson in a middle -- minute that if for any

13   reason Mr. Smith does not live up to his obligations, that the

14   Government's going to go after all three of you and any

15   combination in any order to collect the full half a million

16   dollar bond that I've said today?

17             MS. LLOYD:  Yes.

18             THE COURT:  And so, they could go after your bank

19   account.  They could take any property you own to sell it like

20   the house?  Do you both understand that?

21             MS. LLOYD:  Yes.

22             MS. SMITH:  Yeah.

23             THE COURT:  Okay, Mr. Thompson, how do you fit into

24   this picture?  How do you know Mr. Smith?

25             MR. THOMPSON:  I have been a business associate of

1  Mr. Smith since '21, 2021, outside of SafeMoon.  This was a

2  project we worked on before that all happened.

3        And since then, we've been very good friends.  I

4  still continue to his -- he contracts as a third-party

5  contractor for my company currently.  And I supervise that line

6  of business.

7        THE COURT:  So what is your business, sir?

8        MR. THOMPSON:  I am a Government contractor.  That's

9  all I can say to the Court.

10        THE COURT:  Okay, but --

11        MR. THOMPSON:  If we want to have a conversation, we

12  can have a conversation.

13        THE COURT:  I think they're going to want a

14  conversation --

15        MR. THOMPSON:  That's fine.

16        THE COURT:  -- because again, he's doing --

17        MR. ROLLE:  I'm not at liberty right now to say the

18  name of my company and what we do in open court, but I can have

19  a conversation.

20        THE COURT:  Okay, so how about this?  How much money

21  did you make last year?

22        MR. THOMPSON:  I made $157,000 last year roughly.

23        THE COURT:  Thank you.  And are you a techie?

24        MR. THOMPSON:  I am a techie.  I'm a director of

25  program technology.  And I do hold a top secret SCI clearance

1    as well.

2              THE COURT:  Okay.  So, again, you understand what's

3    going on here?

4              MR. THOMPSON:  Yeah.

5              THE COURT:  And you understand that their concern is

6    that he violated laws relating to securities and money

7    laundering and wire fraud, all related to securities.  Is that

8    fair to say, Mr. Galeotti?

9              MR. GALEOTTI:  Yes, Your Honor.

10             THE COURT:  Okay.  So, again, the Government could go

11   after you, Mr. Thompson, and any accounts that you own, any

12   payments that you're expecting from the Government that would

13   be easy to be intercepted by the Government.

14             So if he doesn't live up to his obligations, he could

15   financially ruin all three of you.

16             MR. THOMPSON:  Yes, ma'am.

17             THE COURT:  Do you all understand that?

18             MR. THOMPSON:  Yes.

19             MS. LLOYD:  Yes.

20             THE COURT:  And do you still want to sign this bond

21   with all the conditions that have been read into the record?

22             MR. THOMPSON:  Yes, ma'am.

23             MS. LLOYD:  Yes.

24             MS. SMITH:  Yes.

25             THE COURT:  Okay.  While they're signing, Mr. Smith,

1   I'm going to give you the following warnings which I'm required

2   to do by law.

3           If for any reason you don't come back to Court when

4   you're directed to do so, agents will be sent to find you.

5   You'll be placed under arrest and the likelihood is you will

6   not be released again pending your trial on the charges that

7   you are now accused of.

8           In addition, there's a separate federal crime called

9   bail jumping.  Bail jumping is punishable by up to 10 years in

10  prison.  So even if you were never convicted of the crime for

11  which you stand accused, you can be convicted of bail jumping.

12          Last, but not least, if you commit any other crime

13  while you're out on bail, they can enhance the penalty for the

14  crime you commit.

15          If you commit a felony in New York while out on bail,

16  they could add 10 years to the sentence because you committed

17  the crime while out on bail.  Do you understand all of those

18  warnings?

19          THE DEFENDANT:  I understand.

20          THE COURT:  And will you come back to Court whenever

21  you're directed to do so?

22          THE DEFENDANT:  100 percent, I will.

23          THE COURT:  And will you abide by all the other

24  conditions that have been set forth on the record?

25          THE DEFENDANT:  Every single one of them.

1     THE COURT:  Thank you very much.  Then I'll ask you

2  after they sign for you to sign.  It wasn't the trip to New

3  York you had planned, right?

4     MR. THOMPSON:  That's right.  Thank you.

5     THE COURT:  So Ms. Lloyd, Ms. Smith, Mr. Thompson,

6  thank you.  You could all be seated.  Thank you.

7     MR. THOMPSON:  Thank you, Your Honor.

8     MR. DAHLBERG:  Your Honor, can I ask a clarification

9  on one condition?

10     THE COURT:  Certainly.

11     MR. DAHLBERG:  The monitoring of electronic devices,

12  could there be some clarification on what's being monitored?

13  What would constitute --

14     THE COURT:  Any electronic device that he is using

15  can be monitored by Pre-trial correct, Ms. -- Mr. Long

16  (phonetic)?

17     MR. LONG:  With a broad condition of his devices,

18  that would refer to any cell phones, tablets, and laptops that

19  he would (indiscernible) --

20     MR. DAHLBERG:  Would that be extended to software

21  that's -- alerts if there are certain sites that are accessed -

22  -

23     MR. LONG:  Well --

24     MR. DAHLBERG:  I just want to make sure

25  communications with --

1          THE COURT:  I think that they can look without

2  getting a warrant, right?  You can sort of monitor what he's

3  doing on those devices?

4          MR. LONG:  If you can just finish your sentence, I

5  think --

6          MR. DAHLBERG:  Yeah, there -- I just want to make

7  sure communications with counsel are going to be --

8          MR. LONG:  Oh, okay.

9          MR. DAHLBERG:  -- filtered out.

10          MR. LONG:  So we look at everything, but as far as

11  your communications, especially doing the email, he would

12  actually flag your email and make sure we note your

13  communications, that it's a privileged, you know.  That's

14  pretty standard in every site we monitor.

15          MR. DAHLBERG:  Okay.  Thank you.

16          MR. ROLLE:  And just, I mean, probably for the

17  Defendants?

18          THE COURT:  Yes, go ahead standard --.

19          MR. ROLLE:  We're not part of that.  That has nothing

20  to do with us.

21          THE COURT:  So Pre-trial is as I say an arm of the

22  Court.  They're not part of the Government's oversight or what

23  they're asking for.  They're trying to make sure you're living

24  up to the conditions I've set.

25          They're going to monitor the computer and the

1  devices, so that all these other things that they insisted on

2  like the digital assets, not opening accounts, blah, blah,

3  blah, I'm sorry to call it blah, blah, but that's what they're

4  going to be monitoring for.

5  So they're not interested in trying to invade your

6  communications with your counsel.  That's what Mr. Dahlberg's

7  concern was.

8  Mr. Dahlberg will know how to uphold your rights in

9  this matter and Pre-trial is not interested in invading your

10  rights, okay?  I've taken a signatures of Mr. Smith.  Mr. Smith

11  Says that he understands and that he'll come back.

12  And I've given Mr. Smith two weeks to file the

13  confession of judgment in whatever form that takes in New

14  Hampshire with the assistance of his counsel.

15  I've taken the signatures today in Court of Ms.

16  Lloyd, Ms. Smith, and Mr. Thompson.  So I'm putting my initial

17  and today's date next to their signature so that has been

18  satisfied.

19  Was there -- oh, there is another matter.  Mr. Rolle,

20  pursuant to Federal Rule of Criminal Procedure 5(f), I remind

21  the prosecution of its obligation under Brady v. Maryland and

22  its progeny to disclose to the defense all information whether

23  admissible or not that is favorable to the defendant, material

24  either to guilt or to punishment, and known to the prosecution.

25  The prosecution must make good faith efforts to

1    disclose such information to the defense as soon as reasonably

2    possible.

3            I will enter a written order more fully describing

4    this obligation and the possible consequences of failing to

5    meet it.  And I direct the prosecution to review that order and

6    to comply.

7            Does the Prosecution confirm that it understands its

8    obligations and will fulfill them?

9            MR. ROLLE:  Yes, Your Honor, we will.

10            THE COURT:  Thank you.  Was there anything else on

11    behalf of the United States today?

12            MR. ROLLE:  Yes, Your Honor, we have an application

13    for an order of excludable delay.  We have an appearance date

14    of December 6th at 12:00 p.m. before Judge Komitee to whom this

15    case is assigned.

16            We have signed the paperwork.  The basis for our

17    application to exclude time -- it was allowed -- is to allow us

18    time between today and December 6th to begin discussions with

19    counsel about the course of this case, discovery, any potential

20    pre-trial resolution that might be achievable, and to begin our

21    efforts in that regard.

22            And we think that in view of those bases, it would be

23    in the interest of justice to not have the time ticking away on

24    the speedy trial clock.

25            THE COURT:  And has this been raised with Judge

1    Komitee?

2            MR. ROLLE:  Yes, we spoke with Judge Komitee's

3    chambers before the appearance.

4            THE COURT:  And does Judge Komitee say that you can

5    make the application to my attention?

6            MR. ROLLE:  I'm going to check with the folks who

7    spoke with Judge Komitee's chambers.

8         (Counsel confer)

9            MR. ROLLE:  Your Honor, we asked for the date.  We

10   can call them back and ask for the, you know, their approval

11   and making the application.  I think either way, it is in the

12   interest of justice.  You can recommend that should Judge

13   Komitee --

14           THE COURT:  I don't do recommendations.  I will do it

15   under this one time, but that must be in all future requests.

16   I am sure that they assumed by giving you the date that they

17   were giving you permission, but it should be clear that they're

18   giving permission to make the application to the duty

19   magistrate judge for future, okay?

20           MR. ROLLE:  And we'll be sure to check that going

21   forward.

22           THE COURT:  So, Mr. Smith, I see that you have signed

23   this although who would know that that's a signature that says

24   Smith?  And who would know that that's a signature that says

25   Dahlberg, but I assume you reviewed this with Mr. Dahlberg and

1   that you understand the application and its consequences; is

2   that correct?

3           THE DEFENDANT:  That's correct.

4           THE COURT:  And Mr. Dahlberg, do you concur with what

5   Mr. Rolle put on the record about excluding this time?

6           MR. DAHLBERG:  Yes, I do and I discussed it with Mr.

7   Smith.

8           THE COURT:  Okay.  I need to make sure for myself

9   that you understand the nature of the request and its

10  consequences.

11          So the Government has 70 days from the date that

12  you're arraigned on the indictment, which is what we

13  accomplished maybe 40 minutes ago when we entered your not

14  guilty plea.

15          They have 70 days to commence the trial against you

16  under the Speedy Trial Act.  If they do not commence the trial

17  within 70 days, your attorney can come into the Court and ask

18  that the charges be dismissed.

19          This application stops that 70-day clock today and

20  won't start to count the 70 days until your next appearance

21  before the Honorable Eric Komitee, who's the district judge

22  assigned to try this case.  And that will be on December 6,

23  2023.

24          Do you understand the application and its

25  consequences?

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  And did you discuss this matter with your

3    attorney?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Do you have any questions for me, Mr.

6    Smith, regarding the application or its consequences?

7          THE DEFENDANT:  I don't.

8          THE COURT:  Then because the parties have represented

9    that they would like to engage in plea negotiations and discuss

10   this case in detail and focus their efforts on trying to

11   resolve the case without a trial, they have asked to exclude

12   the time between today and December 6th from the calculation of

13   Speedy Trial deadline.

14         And for the reasons on the record, I find that this

15   serves the ends of justice and outweighs the interests of the

16   publically named Defendant and Speedy Trial for the reasons

17   given on the record.  And therefore, I grant the application.

18         Was there anything else, Mr. Rolle, before we

19   adjourn?

20         MR. ROLLE:  No, Judge, thank you.

21         THE COURT:  Anything else, Mr. Dahlberg?  Your client

22   seems to have something.  Yes.

23         MR. DAHLBERG:  Yes, one thing, Your Honor.  We would

24   ask if the Court would consider ordering the redaction of Mr.

25   Smith's home address from the last page of the indictment.

1    It's in the forfeiture allegation.

2           Mr. Smith has informed me that since the indictment

3    went public, and it's been I guess put out in the press release

4    or in the news or what have you --

5           THE COURT:  People are coming around to his property

6    or?

7           MR. DAHLBERG:  No, just that he's seeing threats

8    online directed towards him and his family.

9           THE COURT:  Is there any reason why you couldn't

10   redact it at this point, but it's still going to be online for

11   I mean, I don't know how to get the postings down.

12          MR. DAHLBERG:  I don't know.  I think the cat is out

13   of the bag, Your Honor, but I just do this to the extent it

14   would help mitigate any future --

15          THE COURT:  Mr. Rolle, any problem with that?

16          MR. ROLLE:  No, Judge, we have no objection.

17          THE COURT:  So you will redact the indictment?

18          MR. ROLLE:  Well, I think we have to contact the

19   Clerk's Office to in terms of what is up there.  And I think,

20   Your Honor, what they're going to ask for is that there be

21   something --

22          THE COURT:  I'm granting the motion to redact --

23          MR. ROLLE:  Okay.

24          THE COURT:  -- that portion of the indictment --

25          MR. ROLLE:  Thank you.

1           THE COURT:  -- where his address is posted as part of

2      the forfeiture allegation.  So I'm going to grant that

3      application and tell you to file a redacted copy.  And they

4      could substitute one indictment for the other.

5           MR. ROLLE:  And if you could just say that you direct

6      the Clerk's Office to docket the redacted --

7           THE COURT:  I direct the Clerk's Office to docket the

8      redacted copy.  And I will say that the other copy should be

9      restricted for parties' eyes only.

10          MR. ROLLE:  Thank you, Your Honor.

11          THE COURT:  Thank you.  And I'm signing that Mr.

12     Smith should be released on the conditions set forth on the

13     record.

14          Mr. Dahlberg, anything else?

15          MR. DAHLBERG:  No, Your Honor, thank you.

16          THE COURT:  Then this matter is adjourned.  Thank

17     you.

18          MR. ROLLE:  Thank you.

19          THE CLERK:  Thank you.

20        (Proceedings concluded at 3:37 p.m.)

21

22

23

24

25

**CERTIFICATE**

1

2

3

4        I, Chris Hwang, court approved transcriber, certify

5    that the foregoing is a correct transcript from the official

6    electronic sound recording of the proceedings in the above-

7    entitled matter.

8

9

10

11

12

13    _____          January 16, 2024

14    Chris Hwang                   Date

15    Court Reporter

16

17

18

19

20

21

22

23

24

25